**UNITED STATES of America, Appellant,**

v.

**Jonathan MOORE, Defendant, Appellee.**

**No. 00–1174.**

United States Court of Appeals, First Circuit.

Heard Nov. 7, 2000.

Decided Dec. 29, 2000.

that the pumps' piping problem would be included on this list.

Theodore D. Chuang, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief for appellant.

E. Peter Parker for appellee.

Before SELYA, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

BOWNES, Senior Circuit Judge.

The government appeals from the district court's interlocutory order suppressing evidence of contraband that the police seized from defendant-appellee Jonathan Moore. We reverse and remand for further proceedings consistent with this opinion.

## I.

On April 29, 1998, a federal grand jury returned a one-count indictment charging Moore with possession of ammunition by a previously convicted felon, 18 U.S.C. § 922(g)(3). On January 15, 1999, Moore filed a motion to suppress evidence. On November 24, 1999, after an evidentiary hearing, the district court allowed Moore's motion to suppress and made the following findings and conclusions:

Early in the morning of November 29, 1997, Officers Sean Joyce and Jeffrey Cecil of the Boston Police Department were on patrol near 32 Maple Street, an apartment building in Roxbury, Massachusetts. They suspected that drugs were being distributed from the building. Both officers had made drug-related and other arrests in that area.

At approximately 2:00 a.m., the officers noticed that there was significant foot traffic going into and coming out of 32 Maple Street. The people entering the building stayed only a short time before leaving. The officers recognized some of the visitors as having been arrested for drug and other offenses.

After observing the entrance for a while, Officers Joyce and Cecil approached the building to investigate further. The apartment building was three stories high and contained between nine and twelve units. A light from a unit on the third floor was the only light visible from outside the building. The officers entered the building through the unlocked front door. There were pieces of small plastic bags strewn on the floor of the entryway "consistent with the possibility that drug customers had consumed the contents of the drug packages and then discarded the plastic scraps on the floor."

As they stood in the common hallway of the building, the officers heard the sounds of a heated argument, including shouting and swearing, coming from one of the upper floors. The officers decided to go up the stairs to investigate. When they reached the second-floor landing, they heard a door slam on the third floor and someone running down the stairs. They then saw a man, later identified as Moore, come running down the stairs. Moore came to a sudden stop on the stairs after almost accidentally colliding with Officer Cecil.

Officer Joyce, who was standing just behind Office Cecil, noticed that Moore's right hand was clenched at his side as if he was attempting to conceal something in it.[1] Officer Joyce grabbed Moores right wrist and asked Moore what he had in his hand. Moore did not answer. After Officer Joyce repeated the question, Moore opened his hand, revealed its contents, and said, You got me. In his hand Moore held a small plastic bag containing a white powdery substance that Officer Joyce believed to be heroin. Joyce then arrested Moore for possession of an illegal drug. A search of Moore's person incident to the arrest yielded some packages of crack cocaine and a handgun.

In its rulings, the district court assumed that the officers were justified in entering the hallway of the building. It then stated that the officers were justified in ascending the stairs to investigate the sounds and in detaining Moore in a *Terry* stop. The court also determined that the officers could justifiably use a modicum of physical force, such as grabbing the defendant by the wrist, in order to hold him in their presence long enough for them to make a [*Terry*] investigation.

The district court held, however, that because Officer Joyces purpose was to search rather than merely to "stop," his

---

1. Officer Joyce testified that he did not know precisely what was in Moores hand, i.e. whether it was a weapon or contraband; that he was concerned for the officers safety; and that in the past, he had encountered drug suspects who were found to be in possession of weapons or other dangerous objects. The district court neither explicitly credited nor rejected this testimony.

actions of grabbing Moores wrist and asking him what was in his closed hand constituted a search requiring probable cause. The district court went on to conclude that although police are entitled to perform a pat-frisk of the subject of a *Terry* stop to assure themselves that he does not have weapons at hand, Officer Joyces actions could not be justified as such a frisk because it is more likely that Joyce thought the defendant was concealing contraband and because there were no objective facts ... that tended to indicate that the defendant might be armed or ... concealing a weapon in his hand. Moreover, the district court stated that although Moore opened his hand himself, his "consent" to the search was not voluntary because it was effectively compelled by the officer's grasp and questioning.

Accordingly, the district court held that the compelled disclosure of the contents of Moore's hand required probable cause. It concluded that there was no probable cause because the drug activity was not necessarily taking place on the third floor and Moore was more readily connected to the argument than to the earlier observed drug traffic. The district court then ordered the suppression of the heroin found in Moores hand and the firearm, ammunition, and crack cocaine found during the subsequent search incident to arrest.

On December 30, 1999, the government filed a motion for reconsideration of the courts rulings, which the district court denied after oral argument. The government appeals from the interlocutory order suppressing evidence.

## II.

█ We review the district court's factual findings for clear error, but review *de novo* its conclusions of law and its ultimate rulings on the constitutionality of the government's conduct. *United States v. Taylor*, 162 F.3d 12, 17 (1st Cir.1998).

█ Under *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),

police officers may conduct a brief, investigatory stop of an individual based on reasonable suspicion of criminal activity. In determining whether action taken by a police officer is constitutionally permissible as part of a *Terry* stop, we consider (1) "whether the officer's action was justified at its inception," and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 20, 88 S.Ct. 1868; *accord United States v. Trullo*, 809 F.2d 108, 111 (1st Cir.1987).

█ Whether a *Terry* stop remained related in scope to the circumstances justifying the interference is measured by an objective reasonableness standard. *See Terry*, 392 U.S. at 20, 88 S.Ct. 1868. "The court must consider the circumstances as a whole, and must balance the nature of the intrusion with the governmental interests that are served." *United States v. Cruz*, 156 F.3d 22, 26 (1st Cir.1998) (quoting *United States v. Hensley*, 469 U.S. 221, 228, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985)). Officer safety is one such governmental interest; generally, if officers have reason to believe that they are dealing with an armed and dangerous individual, they may take reasonable steps to protect themselves by frisking the individual for weapons. *See Taylor*, 162 F.3d at 17, 20 (internal citations omitted).

█ In its ruling on the motion to suppress, the district court properly concluded that the officers were justified in initiating the investigatory stop of Moore. The district court erred, however, in concluding that Officer Joyces actions exceeded the permissible scope of the *Terry* stop.

Officer Joyce's actions were within the appropriate scope of a *Terry* stop because they were based on an objectively reasonable concern for officer safety under the circumstances. At the time of the search, the officers were aware that they were in a neighborhood known for a high crime rate and drug activity. They were in a building at which they had just observed significant

foot traffic suggesting ongoing drug sales; the officers observed at least one known drug user entering the building. They had noticed plastic bags on the floor of the entryway that were knotted in a manner indicating that they had been used to package crack cocaine.

Moreover, Moore had come running from an apartment in which there had been a heated, possibly violent argument, the only apartment from which there were any recent signs of activity. Because the argument stopped suddenly after Moore left the third-floor apartment, it was reasonable for the officers to suspect that he was a participant in that argument. Upon seeing the officers, Moore clenched his hand in a manner indicating that he was attempting to hide something from the officers.

Moore therefore was reasonably linked not only with indicia of drug activity, but of a violent confrontation. The hour was late and the neighborhood dangerous. Together, these circumstances supported the officers' decision to search Moore's hand for weapons within the lawful scope of the *Terry* stop. *See Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000) (holding that there was reasonable suspicion to stop the defendant based on his presence in an area known for heavy narcotics trafficking and his flight upon seeing police officers); *United States v. Cruz*, 156 F.3d 22, 26 (1st Cir.1998), *cert. denied*, 526 U.S. 1124, 119 S.Ct. 1781, 143 L.Ed.2d 809 (1999) (upholding a *Terry* frisk of the driver of a car stopped for speeding because the stop occurred late at night, the car had stopped abruptly, there were multiple people in the car, and there had been a commotion among the other occupants of the car); *United States v. Villanueva*, 15 F.3d 197, 198–99 (1st Cir. 1994) (upholding a daytime *Terry* frisk of an individual who had engaged in disorderly conduct, such as yelling obscenities and banging on train windows, at a subway station known for volatile conduct); *United States v. Stanley*, 915 F.2d 54, 56 (1st Cir.1990) (holding that there was reasonable suspicion to stop an occupant of a parked car based on his presence late at night in an area known for drug activity, his leaning over the car console with a faint light, and his attempt to hide something upon seeing a police officer).

The district court expressed skepticism that the officers believed that Moore was carrying a weapon and stated that "it is more likely that Joyce thought the defendant was concealing contraband." Weapons such as knives and razors can, however, be concealed inside a closed fist. *Cf. State v. Williams*, 249 Neb. 582, 544 N.W.2d 350, 351–54 (1996) (holding that forcing a suspect to open her closed fist was part of a *Terry* frisk for weapons was justified because the officers could not determine what she was holding and were concerned that she might be holding a razor blade or knife).

In any event, as the district court acknowledged, we measure the officer's actions by an objective standard. *See Terry*, 392 U.S. at 21, 88 S.Ct. 1868. If the facts available to the officer at the moment of the search "warrant[ed] a man of reasonable caution in the belief" that the action taken was appropriate, it is valid. *Id.* at 21–22, 88 S.Ct. 1868 (internal quotation marks omitted). As explained *supra*, we think that the evidence of proximate drug-related criminal activity, together with Moore's likely involvement in a heated, possibly violent argument, warranted the reasonable suspicion that the item Moore was hiding in his hand was a weapon.

Because we conclude that the officers' actions were justified pursuant to a lawful *Terry* stop, we need not reach the question of whether the search of Moore's hand was supported by probable cause.

***Reversed and remanded for further proceedings consistent with this opinion.***